IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALBERT BUTLER, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 3:14-CV-1991 |
| | § | |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| THE CITY OF DALLAS, TEXAS, | § | |
| AND BRIAN BRADLEY, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW, Albert Butler and complaining of Defendants, The CITY OF DALLAS,

Texas, more particularly The CITY OF DALLAS Police Department, by and through its agent

and servant acting in his official capacity, Officer Brian Bradley and in his official capacity as a

Dallas police officer and for cause would show the Honorable Court as follows:

### NATURE OF THE ACTION

1.      This is an action brought by the Plaintiff against The CITY OF DALLAS for

Dallas Police Officer Brian Bradley's use of excessive force, assault, unlawful arrest and

detention resulting in the injuries sustained by Albert Butler ("Butler") under the color of law in

violation of his individual rights under the Fourth and Fourteenth Amendments of the United

States Constitution and in violation of his civil rights pursuant to 42 U.S.C. § 1983.

2.      Plaintiff alleges that the City Manager, A.C. Gonzalez ("Gonzalez"), who is

responsible for the daily operations of The CITY OF DALLAS and Chief of Police, David O.

Brown ("Brown"), delegated with the authority for setting policies, including training of the

Dallas Police Officers, had a duty, but failed to implement and/or enforce policies, practices and

procedures for the Dallas Police Department ("DPD") that respected his constitutional rights to

protection and equal treatment under the law.  This duty was delegated to Chief Brown by the Dallas City Council and City Manager Gonzalez.  Defendant The CITY OF DALLAS, City Manager Gonzalez, Mayor Rawlings and Chief Brown's failure to implement the necessary policies and the implementation of unconstitutional policies deprived Butler of equal protection and due process under the fourth and Fourteenth Amendments and caused his unwarranted and excruciating physical and mental anguish.  For these civil rights violations and other causes of action discussed herein, Plaintiff seeks answers and compensation for their damages.

## PARTIES

3.     Plaintiff, Albert Butler is a citizen of the United States and a resident of Dallas County, Texas.

4.     Defendant The CITY OF DALLAS is a municipality located in Dallas County, Texas. The CITY OF DALLAS operates the DPD.  The CITY OF DALLAS funds and operates the DPD, which, along with City Manager Gonzalez, Chief Brown and Mayor Rawlings are responsible for the implementation of the police department's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.  The CITY OF DALLAS POLICE DEPARTMENT is also responsible for preventive, investigative, and enforcement services for all citizens of The CITY OF DALLAS. The CITY OF DALLAS may be served with citation herein by and through its agent for service of process, Warren Ernst, City Attorney, Dallas City Hall, 1500 Marilla Street, Dallas, Texas 75201.  Additional service is being made on Mayor Mike Rawlings, 1500 Marilla Street, Room 5EN, Dallas, Texas 75201.

5.     Defendant Brian Bradley ("Bradley"), upon information and belief, is a resident of Dallas County, Texas, and at all times material herein was a police officer acting in the course and scope of his employment for The CITY OF DALLAS and DPD.  Defendant Bradley may be

served with citation at the Dallas Police Department, 1400 S. Lamar, Dallas, Texas 75215 or wherever he may be found.

### JURISDICTION AND VENUE

6.     Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, to redress the deprivation of rights, privileges and immunities guaranteed to Plaintiff by constitutional and statutory provisions. Plaintiff further invokes the supplemental jurisdiction of this court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the State of Texas.

7.     Venue is proper in this court because the causes of action occurred within the Northern District of Texas, Dallas Division.

### STATE ACTION

8.     To the extent applicable, Defendant Bradley was acting under the color of state law when he subjected Plaintiff to the wrongs and injuries hereinafter set forth.

### FACTS

9.     On or about December 7, 2012, Albert Butler, after shopping for the holidays at Walmart, was driving home eastbound at 9700 Forest Lane when a police vehicle driven by Defendant Bradley pulled alongside Butler's vehicle and stared at him in a very strange manner for no reason at all. Defendant Bradley followed Butler for a short distance before he made a u-turn and headed westbound. Butler thought Defendant Bradley's actions were unusual but was not worried since he was not violating any traffic laws.

10.     Butler continued his drive home but suddenly noticed that Defendant Bradley, for reasons unknown, made a u-turn and was once again following him for no lawful reason. Butler

was not speeding nor was he violating any traffic laws so he was confused as to why Defendant Bradley was following him so closely and as a result became extremely concerned and worried.

11.    After trailing Butler for a short distance, Defendant Bradley pulled directly behind Butler's vehicle and activated his light bar.  Butler continued driving until he could safely pull over to the side of the road.  Butler remained in his vehicle and did not exit until he received instructions from Defendant Bradley.  Defendant Bradley approached Butler and immediately began a body search for no lawful reason and without consent.  Despite Defendant Bradley's unlawful conduct, Butler remained cooperative and did not resist.

12.    Defendant Bradley searched Butler's pockets, conducted a pat down and would not respond to Butler when asked why he was being harassed.  Defendant Bradley conducted a search of Butler despite his inability to point to "specific and articulable facts" that would indicate to a reasonable person that a crime has been, is being, or is about to be committed.  As Defendant Bradley searched Butler he looked towards his vehicle and realized that he was in view of the dash cam video.  It was at that point that Defendant Bradley led Butler to the back of his car and ordered him to the ground.  Not fully understanding what was happening and unable to clearly understand exactly what Defendant Bradley was saying, Butler advised Defendant Bradley that he could barely bend down because of an injury and indicated he was in pain.  Defendant Bradley ignored Butler's plea and continued his assault.  Defendant Bradley grabbed Butler by his neck and unnecessarily, willfully, maliciously and without provocation body slammed him to the ground.  Defendant Bradley dragged Butler out of the view of the dash cam video and repeatedly kicked and punched him and placed his knee on Butler's neck making it difficult for him to breathe, while he was restrained in handcuffs and unable to defend himself from the unlawful assault.

13.     At one point Butler screamed "Oh God" and asked Defendant Bradley what did he do but Defendant Bradley did not respond and continued his assault on Butler. At one point Butler was vomiting and had an asthma attack. The only thing that stopped Defendant Bradley from further assaulting and/or killing Butler was the arrival of additional police officers. Butler was transported to the hospital where he was treated for the injuries he received.

14.     As of result of the incident, Butler suffered severe injuries to his back, his left wrist, which required surgery and he received multiple lacerations to his head. Butler has had multiple surgeries to repair injuries to his knees and his right hand, which will require additional surgery. The pressure placed on Butler's back and neck caused severe damage, which he is currently undergoing medical treatment to treat what has been diagnosed as nerve damage.

15.     Defendant Bradley searched Butler's vehicle and removed his wallet out of his pocket and prevented him from leaving until he was issued a citation. The Defendant Officer had no probable cause or reasonable suspicion to believe that Butler was or had committed a crime. Butler did not consent to the search of his vehicle or his body.

16.     In an effort to justify his behavior, Defendant Bradley issued a citation to Butler citing him for making an improper turn. The issuance of this citation by Defendant Bradley was malicious and without reasonable or probable cause and was an attempt to cover up and justify his offensive and malicious acts and conduct.

17.     The acts of Defendant Bradley are a pattern of conduct by Dallas Police Officers consisting of beatings, assaults and intimidation during arrest and booking procedures by which said defendant and other officers, acting under color of law, have denied to various persons the rights, privileges and immunities guaranteed to them by the Constitution and laws of the United States.

18.     As a result of the incident, Butler filed a complaint with the Dallas Police Department's Internal Affairs Department alleging excessive force but they failed to take any action against Defendant Bradley. *See* Exhibit A. Butler timely filed an appeal of the Internal Affair's decision with the Citizens Police Report Board (the "Board"). On or about November 12, 2013, the Board found that inappropriate force was used on Butler. *See* the Citizens Police Review Board Meeting Record, line item No. 5, Allegation #1 attached hereto as Exhibit B. During the course of the investigation, it was discovered that Defendant Bradley did not check out a body microphone as required by General Order 328.03. *See* Chain of Command Recommendation CN 2012-462 attached hereto as Exhibit C.  It was also discovered that Defendant Bradley wore his long sleeve uniform shirt with both sleeves rolled up which is in violation of General Order 802.03. *id.*

19.     As a result of the Defendant Officer's unlawful attack on Butler, he feared for his life and suffered severe injuries.  Butler was beaten and wrongfully detained by Defendant Bradley for no lawful reason at all.

20.     The CITY OF DALLAS, City Manager Gonzalez and Chief Brown knew of Defendant Bradley's behavior and lack of training but did nothing to protect Plaintiff and others from the harm he suffered.

21.     Defendant, The CITY OF DALLAS and DPD has a longstanding record of not providing DPD officers with adequate training and not preventing excessive force, racial profiling or wrongful arrests by Dallas Police officers.  Dallas City Councilman Dwaine Caraway confirmed to newsmakers that the city council and The CITY OF DALLAS had in fact delegated policy-making authority to Chief Brown, giving him the responsibility for setting training policies and that there are training issues.

22.    In fact, City Councilman Caraway and Chief Brown have both acknowledged that there are issues with police training.  In fact, Chief Brown has admitted that "there is a need for a additional police training.  As a result of the lack of training and the official custom or policies of the DPD, the following incidents have taken place in The CITY OF DALLAS under the direction of City Manager Gonzalez, Mayor Rawlings and Chief Brown:

• Dallas is at the top of the list of police misconduct stats in the South, along with Houston, San Antonio and Irving

• Dallas ranked #11 in the highest police misconduct rates, ranking higher than all of Orange County, California.

• Dallas ranked second nationally in police misconduct incidents, behind #1 New Orleans.

• Since 2001, over 60 unarmed black men have been killed by Dallas Police Department

23.    There's been a number of incident involving the DPD where it was found that individuals were harassed and/or arrested for no lawful reason.  Ronald Bernard Jones was arrested and charged with two felonies — which were later dismissed — after he was stopped walking near Reunion Boulevard in 2009 when Officer Matthew Antkowiak drove up in a squad car and stopped him.  A police report stated that Jones threw a beer can at Antkowiak, which is not seen in the video. The officer also told investigators that Jones turned around suddenly while he was frisking him on the squad car hood, so he took him to the ground and engaged in a struggle.  The officer claimed that he hit his head hard on the pavement and was disoriented after that, according to the investigation. He told a sergeant that Jones began to choke him and kicked him so hard between the legs that he was actually lifted off the ground.  The video showed that didn't happen, according to the investigation.  In another incident, Jesse Aquino ("Aquino") was

disciplined for being untruthful in a police report. Aquino's deceit was captured by an in dash camera video of him stopping Robert Lyons. Aquino claimed he stopped Lyons because he was walking in the middle of the street but the dash cam video revealed there was no sidewalk and Mr. Lyons was not walking in the middle of the street. Despite this, Aquino stopped, searched him and eventually wrongfully arrested him.

24.     There exist, a persistent, widespread practice of excessive force and wrongful arrests that results from the training or lack thereof, received by DPD officers. Upon information and belief, DPD officers are trained by individuals with little or no experience working in the field.

25.     Recommendations for revisions in the DPD's policies and procedures regarding the use of deadly force were made by Geoffrey P. Alpert in 1987. It was stated that to protect the safety of the citizens and officers, a new philosophy and a new approach would be required. In order for Dallas to enter the 1990's with a set of police policies, procedures and customs commensurate with its high set of municipal values, a conscious decision must be made to overhaul a system creaking with age and tradition, and made obsolete by the challenges of a new generation of citizens.

26.     The Dallas City Council, which authorized this study, outlined the five major areas to be examined. The areas include:

a) The Police Officer Applicant Selection Process;
b) Teaching Methods and Materials on the Use of Deadly Force;
c) "Shoot-Don't-Shoot" Training;
d) Weapons' Training; and
e) Policies Relating to the Use of Deadly Force.

27.     It was recommended that a formal procedure such as an Early Warning System be developed and implemented to identify officers who are prone to emotional instability or

behavior problems. It was clear that The CITY OF DALLAS, City Manager Gonzalez and Chief Brown knew of the Defendant Officers' emotional instability and prior behavior and/or acts, but did nothing to correct the problem as recommended. It was further recommended that all officers be required to participate in at least 40 hours of in-service training each year which is selected and designed to update them on departmental philosophy, procedures, skills and techniques. It was also recommended that any training which places recruits or officers in stressful situations should be used to assist in improving the individual's performance. For example, an Early Warning System which can assist in the identification of officers who are experiencing stress could eliminate harmful consequences of stress or performance problems before they occur. Although no particular set of criteria can determine stress or performance problems, a system can be established to identify those officers who may be experiencing problems. An early warning system makes no conclusions or determination about stress or performance, but does assist supervisory personnel in evaluating potentially troublesome behavior. Simple criteria including complaints made against the officer, number of times officer has used force, involvement in traffic accidents can be among the factors used to identify officers who may be heading for trouble.

28.     As aforesaid, the Defendant Officer made a unjustified traffic stop, search and detention of Butler where Defendant Bailey used excessive force for no lawful reasons. There is no evidence that the Defendant Officer was in any imminent danger. The dash cam video obtained from Defendant Bradley's squad car clearly shows that Butler did not resist or did anything that would require the use of excessive force.

29.     Butler posed no risk to the Defendant Officer or any other person in the immediate area. Butler was not violating any traffic laws as shown in the dash cam video nor

was he resisting the unlawful search. Butler did not attempt to harm the Defendant Officer and was not committing a crime or reasonably believed to have committed a crime when the officer stopped him, searched him and later assaulted him.

30.   Defendant Bradley's unlawful and unwarranted acts, lack of training and the official customs or policies of the DPD caused Plaintiff's injuries.

31.   Plaintiff would show that at all times material hereto, Defendant Bradley was acting in the scope of his employment as agent, servant, and employee of Defendant The CITY OF DALLAS, specifically the DPD, within its executive branch and was performing a governmental function.

32.   Plaintiff would further show that Defendant Bradley's actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures of the DPD in regards to the use of excessive force for which The CITY OF DALLAS, City Manager Gonzalez and Chief Brown knew or should have known but never provided the requisite and proper training.

33.   Moreover, no reasonably competent official would have concluded that the actions of Defendant Bradley described herein would not violate Plaintiff's rights. In other words, no reasonably prudent police officer under similar circumstances could have believed that Defendant Bradley's conduct was justified.

34.   As a direct and proximate result of Defendants' conduct, Plaintiff has sustained substantial damages and pecuniary losses.

35.   Upon information and belief, the DPD has not implemented policies and procedures to aggressively curtail the use of excessive force that has been a major problem since

the early eighties when the DPD was the subject of a Federal Investigation and continues to exist today.

## EXCESSIVE FORCE
### COUNT I-42 U.S.C. § 1983

36.    Plaintiff incorporates by reference paragraphs 1 through 35 as if fully set forth herein.  Plaintiff would show that Defendant Bradley's actions on the occasion in question were wrongful and constituted gross negligence in depriving him of his constitutional rights, as alleged more fully below.

37.    Plaintiff would show that at all times material hereto, Defendant Bradley had a duty to avoid infliction of unjustified bodily injury to him, to protect his bodily integrity and to not trample on his constitutional rights.

38.    Plaintiff would show that Defendant Bradley failed to act as a reasonable police officer would have acted in the same or similar circumstances.  That is, Defendant Bradley, without justification and the need to do so, wrongfully detained, arrested and assaulted Butler as described above without probable cause and/or legal justification.  Butler did not break any traffic laws nor was he committing any crimes or resisting when the Defendant Officer assaulted him.  The Defendant Officer placed Butler in fear of losing his life and caused severe injuries, which continue to affect Butler today.

39.    Plaintiff would further show that the excessive force used by Defendant Bradley was not reasonable, justified nor was it necessary under the circumstances.

40.    Defendant Bradley's actions were not objectively reasonable because they followed a procedure designed to inflict excessive force in restraining individuals in a non-life threatening situation.  The Defendant Officer arrested and assaulted Butler for no lawful reason.

41.     Plaintiff would show that Defendant Bradley denied Plaintiff his right to be free from deprivation of his rights without due process of law, in violation of the Fourth Amendment to the United States Constitution.  Plaintiff would show that Defendant Bradley was acting within custom, policy, practice and/or procedure of the DPD in regards to the use of excessive force as authorized and/or ratified by City Manager Gonzalez and Chief Brown at the time of the incident.  Plaintiff would further show that as a result of these violations of his rights, he's suffered damages within the jurisdictional limits of this court.

42.     The force used by Defendant Bradley was unnecessary and unreasonable under the circumstances, as Butler, who was wrongfully detained during a traffic stop, was not resisting and did not require the use of such excessive force.  Defendant Bradley had no probable cause to suspect that a crime was being committed or that his conduct was reasonable.

## RACIAL PROFILING
## COUNT II CIVIL RIGHTS ACTION

43.     Plaintiff incorporates by reference paragraphs 1-42 as if fully set forth herein.

44.     Racial Profiling:   Plaintiff would show that Defendant Bradley clearly and wrongfully used race as a factor, a proxy, for reasonable suspicion and using excessive force on him.  Additionally, Plaintiff would show that it is the official customs, policies and practices of the DPD in regards to the use of excessive force as authorized and/or ratified by City Manager Gonzalez and Chief Brown to treat African Americans in a cruel manner regardless of the circumstances or the need to.  The facts show that there was no probable cause for Butler's arrest.  In fact, Plaintiff would show that the excessive force used by Defendant Bradley was not reasonable nor was it necessary as Butler had not violated any law as evidenced by the incident which was captured on the dash cam video obtained from Defendant Bradley's police vehicle. Butler was not resisting nor did he place Defendant Bradley in fear of imminent harm and/or

danger.  Defendant Bradley treated Butler in the manner he did because Butler is black.  The poor treatment of African Americans by the DPD is a well-known fact in Dallas, Texas.  Plaintiff would show that Defendant Bradley's actions were in violation of TEX. CODE CRIM. PROC. ANN. Art. 2.131-137 (Vernon Supp. 2004) and is therefore strictly liable to Plaintiff.

45.     Plaintiff would show that Defendant Bradley was acting within established wrongful and reckless customs, policies, practices and/or procedures of the DPD in regards to the use of excessive force as authorized and/or ratified by City Manager Gonzalez and Chief Brown at the time of the incident and further that Defendant The CITY OF DALLAS  knew or should have known of these said malicious customs, policies, practices and/or procedures for which City Manager Gonzalez and Chief Brown knew or should have known but never provided the requisite and proper training. Butler would further show that as a result of these violations of his rights, he's suffered damages within the jurisdictional limits of the Court.  Defendant Bradley under the color of law, deprived Plaintiff of his civil rights, privileges or immunities secured by the Constitution and laws pursuant to 42 U.S.C. § 1983.

### FAILURE TO TRAIN
### COUNT III 42 U.S.C. § 1983

46.     Plaintiff incorporates by reference paragraphs 1 through 45 as if fully set forth herein.

47.     Defendant Bradley, acting under color of law and acting pursuant to customs, practices and policies of The CITY OF DALLAS and the DPD in regards to the use of excessive force as authorized and/or ratified by City Manager Gonzalez and Chief Brown deprived Plaintiff of rights and privileges secured to him by the Fourteenth Amendment to the United States Constitution and by other laws of the United States, by failing to provide proper training in the use of excessive force in violation of 42 U.S.C. § 1983 and related provisions of federal

law and in violation of the above cited constitutional provisions. The DPD, City Manager Gonzalez and Chief Brown deliberate indifference in failing to train based on the obviousness of the need for training has resulted in a number of wrongful arrests. In fact, there have been a number of wrongful arrests in the past two years alone.

48.     With respect to the claims made the basis of this lawsuit, The CITY OF DALLAS and the DPD failed to adequately train its employees regarding the use of excessive force. The failure to train its employees in a relevant respect reflects a deliberate indifference to The CITY OF DALLAS, DPD, City Manager Gonzalez and Chief Brown to the rights of the city's inhabitants and is actionable under 42 U.S.C. § 1983.

49.     Defendant The CITY OF DALLAS and DPD under the direction of City Manager Gonzalez and Chief Brown developed and maintained a policy of deficient training of its police force in the use of force, including the use of excessive force in the apprehension of individuals. The CITY OF DALLAS' training is designed and implemented by Chief Brown to act in this regard.

50.     The CITY OF DALLAS and the DPD's failure to provide adequate training to its police officers regarding the use of excessive force reflects deliberate indifference by City Manager Gonzalez and Chief Brown and reckless and conscious disregard for the obvious risk that officers would use excessive force on citizens and made the violations of Plaintiff's constitutional rights, a reasonable probability.

51.     Plaintiff would show that Defendant Bradley's actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures for which The CITY OF DALLAS, City Manager Gonzalez and Chief Brown knew or should have known but never provided the requisite and proper training.

52.     On information and belief, Defendant The CITY OF DALLAS, DPD, City Manager Gonzalez and Chief Brown, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Plaintiff failed to implement the policies, procedures; and practices necessary to provide constitutionally adequate protection and assistance to Butler during his struggle to survive and implemented policies, procedures, and practices which actually interfered with or prevented with or prevented Plaintiff from receiving the protection, assistance and care he deserved.

53.     For instance, the following conduct, policies, and customs, *inter alia*, by Defendants violated Plaintiff's constitutional rights:

a. The CITY OF DALLAS and the DPD's failure to adequately train or discipline its officers;

b. Defendants' policy on the use of deadly force, which encourages officers to shoot first and ask questions later;

c. Defendants' foot pursuit policy;

d. Failing to recognize officers with emotional problems based on prior violations;

g. Failure to conduct the type of investigation that would have been conducted had he not been a minority or a resident in a high crime area;

h. Failure to get more police employees properly trained to professionally handle foot pursuits.

i. 72-hour waiting period policy allows perpetrators of deadly shootings to walk free.

54.     In addition, Defendant The CITY OF DALLAS, DPD, City Manager Gonzalez and Chief Brown as applicable, failed and refused to implement customs, policies, practices or procedures, and failed to train its personnel adequately on the appropriate policies, practices or procedures regarding the use of excessive and deadly force.  In so doing, Defendant The CITY OF DALLAS knew that it was acting against the clear dictates of current law, and knew that as a

direct consequence of their deliberate decisions, the very situation that occurred -- *i.e.*, Plaintiff's injuries -- in all reasonable probability would occur.

55.     Defendants' actions demonstrate that before his injuries Plaintiff was the victim of purposeful discrimination, either because of his race and/or gender, or due to an irrational or arbitrary state classification unrelated to a legitimate state objective.

56.     Additionally, no rational basis existed for The CITY OF DALLAS and the DPD's alleged policies of affording minorities less police protection or assistance than other crime victims or giving these victims less investigative attention than other victims.  Furthermore, unlike what Defendant Bradley did, no reasonably prudent police officer, under similar circumstances, would have used excessive when no crime had been committed.  Moreover, no reasonably competent official would have concluded that the actions of The CITY OF DALLAS and Defendant Bradley described herein would not violate Plaintiff's rights.  In other words, no reasonably officer, under similar circumstances, could have believed that their conduct was justified.

57.     The CITY OF DALLAS and the DPD's failure to properly train its police officers regarding the use of force under the authority of City Manager Gonzalez and Chief Brown was the proximate cause of the violations of Plaintiff's constitutional rights.

### FALSE ARREST
### COUNT IV – 42 U.S.C. § 1983

58.     Plaintiff incorporates by reference paragraphs 1 through 57 as if fully set forth herein.

59.     Additionally, and in the alternative, Plaintiff would show that Defendant Bradley's actions were objectively unreasonable and done in bad faith in that he arrested Butler without probable cause, after assaulting him for no lawful reason.  Butler did not commit a crime

or violate any traffic laws as the evidence would show and simply was driving home when he was racially profiled and harassed by the Defendant Officer. Plaintiff would further show that he's suffered damages within the jurisdictional limits of this court as a result of the wrongful arrests and that such arrest was done under the color of law. Plaintiff would show that Defendant Bradley was acting within the official customs, policies, practices and/or procedures in regards to the use of excessive force as authorized and/or ratified by City Manager Gonzalez, Chief Brown and The CITY OF DALLAS at the time of the incident. Plaintiff would additionally show that such wrongful arrest was done in violation of Butler's rights under the Fourth Amendment of the United States Constitution, as incorporated to the states by the Fourteenth Amendment, and that Plaintiff has suffered damages within the jurisdictional limits of this court as a result of the violations of his rights.

60.     Defendant Bradley was acting under the color of law when he deprived Butler of his constitutional rights to be free from false arrest.

61.     Additionally and in the alternative, Plaintiff would show that Defendant Bradley's actions were objectively unreasonable and done in bad faith because he was without probable cause to think that Butler had committed a crime and/or violated any traffic laws. Plaintiff would further show that he's suffered damages within the jurisdictional limits of this court from the wrongful arrest done under the color of law. Plaintiff would show that Defendant Bradley was acting within custom, policy, practice and/or procedure of The CITY OF DALLAS and DPD in regards to the use of excessive as authorized and/or ratified by City Manager Gonzalez and Chief Brown at the time of the incident. Plaintiff would additionally show that such wrongful act was done in violation of Butler's rights under the Fourth Amendment of the United States Constitution, as incorporated to the states by the Fourteenth Amendment, and that Plaintiff

has suffered damages within the jurisdictional limits of this court as a result of these violations of his rights.

## ASSAULT AND BATTERY
### COUNT V

62.    Plaintiff incorporates by reference paragraphs 1 through 61 as if fully set forth herein.

63    Defendant Bradley intentionally and without consent placed Plaintiff in apprehension of imminent harmful contact and caused harmful bodily contact to him.

64.    As a proximate result of the foregoing, Plaintiff suffered grievous bodily harm, substantial physical and emotional pain.

## NEGLIGENT FAILURE TO TRAIN AND DISCIPLINE
### COUNT VI

65.    Plaintiff incorporates by reference paragraphs 1-64 as if fully set forth herein. Additionally and in the alternative, Plaintiff would show that at all times material hereto, Defendant The CITY OF DALLAS and the DPD lacked guidelines both to restrict the use of force, including the use of excessive force or if such guidelines existed, they were grossly inadequate to ensure the proper and restrained use of force by police personnel.

66.    Plaintiff would show that Defendant The CITY OF DALLAS, City Manager Gonzalez, Chief Brown and Mayor Rawlings endorsed and/or ratified the unfettered use of excessive force, even in situations where no crime was committed.  Plaintiff would show that Defendant The CITY OF DALLAS, City Manager Gonzalez, Chief Brown and the DPD's failure to properly train, supervise, test, regulate, discipline or otherwise control its employees and the failure to promulgate proper guidelines for the use of force including fire arms constitutes a custom, policy, practice and/or procedure in condoning unjustified use of excessive

force in violation of the constitutional rights of Plaintiff. Furthermore, Defendant The CITY OF DALLAS' and the DPD's failure to properly train, supervise, test, regulate, discipline or otherwise control its employees in regards to the use of excessive force as authorized and/or ratified by City Manager Gonzalez and Chief Brown serves to condone the improper behavior previously alleged. As a result of this failure to train and discipline, Plaintiff has suffered damages within the jurisdictional limits of this court. As described above, Defendant Bradley used excessive force when it was unnecessary despite the lack of any threat necessitating the need to do so.

## INTENTIONAL AND NEGLIGENT INFLICTION
## OF EMOTIONAL DISTRESS
## COUNT VII

67.     Plaintiffs incorporate by reference paragraphs 1 through 66 as if fully set forth herein. Plaintiff would show if Defendant Bradley was acting in his individual capacity, when he committed the following intentional torts against Plaintiffs:

    a.     Assault and Battery; and

    b.     False Imprisonment.

68.     As a direct and proximate result of the actions of Defendant Bradley, Plaintiff suffered loss wages, pain and suffering, mental anguish and severe emotional distress within the jurisdictional limits of this court.

69.     Defendant Bradley embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact, caused Plaintiff to suffer extreme and severe mental and emotional distress, agony and anxiety.

70.     Defendant Bradley's aggressive and violent attack on an unarmed and defenseless man offends generally accepted standards of decency and morality.

## GROSS NEGLIGENCE
### COUNT VIII

71.     Plaintiff incorporates by reference paragraphs 1 through 70 as if fully set forth herein.

72.     Defendant Bradley had a duty to employ only reasonable measures in the treatment of Plaintiff.

73.     Notwithstanding said duties, Defendant Bradley acted in a wanton and willful manner, exhibiting such carelessness and recklessness as to evince a conscious disregard for the life and safety of Plaintiff.

74.     Defendant Bradley was aware that Butler had not committed a crime and/or violated any traffic laws and Defendant Bradley was not facing any imminent or serious threat of bodily harm or death. Thus, he knew or should have known that he had no right to use any force whatsoever with respect to Plaintiff. He nonetheless illegally apprehended Plaintiff through his use of excessive force.

75.     Defendant Bradley knew or should have known that his course of action of assaulting, specifically body slamming Butler would place Plaintiff in grave danger of serious injury.

76.     As a direct and proximate result of the gross negligence of Defendant Bradley, Plaintiff has suffered damages.

## DAMAGES ALL DEFENDANTS
### COUNT IX

77.     Plaintiff incorporates by reference paragraphs 1 through 76 as if fully set forth herein. Defendants' acts and/or omissions were a proximate cause of the following Injuries suffered by Plaintiff:

a. Actual damages;

b. Loss of wages;

c. Pain and suffering and mental anguish;

d. Mental anguish and emotional distress suffered by Plaintiff;

e. Loss of quality of life;

f. Exemplary and punitive damages as well as reasonable attorneys' fees and costs of court;

g. Pursuant to 42 U.S.C. §1988, and other applicable laws, Plaintiff should be awarded reasonable attorney's fees for the preparation and trial of this cause of action, and for its appeal, if required;

h. Prejudgment interest; and

i. Post judgment interest.

78.     Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

## PUNITIVE/EXEMPLARY DAMAGES
## X

79.     Plaintiff incorporates by reference paragraphs 1 through 78 as if fully set forth herein. Additionally and in the alternative, the conduct of Defendant Bradley was done with malice. As such, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future. In the alternative, such heedless and reckless disregard of Plaintiff's rights, safety and welfare is more than momentary thoughtlessness, inadvertence or misjudgment. Such unconscionable conduct goes beyond ordinary negligence, and as such Plaintiff requests punitive and exemplary damages are awarded against Defendant Bradley in a sum which is within the jurisdictional limits of this court.

## COSTS AND ATTORNEY FEES

80.     Plaintiff incorporates by reference paragraphs 1 through 79 as if fully set forth herein. Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b). As such, Plaintiff requests the Court to award costs and attorney fees incurred in Plaintiff's prosecution of this litigation.

## JOINT AND SEVERAL LIABILITY

81.     Plaintiff incorporates by reference paragraphs 1 through 80 as if fully set forth herein. Plaintiff would show that Defendants were jointly and severally liable for the negligence and gross negligence, which was the proximate cause of their injuries.

## CONDITIONS PRECEDENT

82.     Plaintiff reserves his rights to plead and prove the damages to which he is entitled to at the time of trial. All conditions to Plaintiff's recovery have been performed or have occurred.

## TRIAL BY JURY

88.     Plaintiff has paid a jury fee and demands trial by jury.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiff has and recover judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiff may show he is justly entitled.

Respectfully submitted,

By:  /s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714
**LAW OFFICE OF DARYL K. WASHINGTON, P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214 880-4883
214-751-6685 - fax

**ATTORNEYS FOR PLAINTIFF**

# EXHIBIT A

# Memorandum



CITY OF DALLAS

**DATE**  December 24, 2012

**TO**  Assistant Chief Michael Genovesi
Patrol Bureau

**SUBJECT**  Notification of Internal Affairs Division Investigation
Control Number: CN2012-462

The Internal Affairs Division has initiated the above numbered investigation involving Police Officer Brian Bradley, #10075, assigned to the Northeast Patrol Division.   It is alleged that Officer   Bradley used excessive force against a citizen.   This notification is for your information only. If you have any questions concerning this investigation, please feel free to contact Detective Juan Contreras, #8529 at 214-671-3990.

*Christina Smith*

Christina Smith
Deputy Chief of Police
Internal Affairs Division
Investigations Bureau

CONFIDENTIAL                    ATTACHMENT 17

# EXHIBIT B

# Citizens Police Review Board
# Meeting Record

The Citizens Police Review Board meetings are recorded.  Agenda materials and audiotapes may be reviewed/copied by contacting the Citizens Police Review Board Coordinator at 214-670-3246.

**Meeting Date:** November 12, 2013          **Convened:** 1:05 p.m.          **Adjourned:** 3:17 p.m.

**Board Members Present:**
Carl Raines, **Chair**
Martin Birnbach
Winnie Dixon
Miriam Dominguez
Phil Foster
Mario Gutierrez
David Hardt
Tommy Hines
Thomas Jefferson
Mike Pappas
Felix Saucedo
Dwight Williams
Lt. Glen Edney (Technical Advisor/City of Ft. Worth)
Dr. LaTesha Watson, Lieutenant (Technical Advisor/City of Arlington)

**Staff Present:**
Sgt. William Griffith, IAD, DPD
Sgt. Amanda Renteria, IAD, DPD
Sgt. Steve Shaw, NE, DPD
Detective Julia Menchaca, IAD, DPD
Senior Corporal Janey Tolden, SC, DPD
Senior Corporal Tom Naulty, IAD, DPD
Senior Corporal Reginald Luster, IAD, DPD
Senior Corporal Juan Contreras, IAD, DPD
Sylvia McClellan, Assistant City Attorney, CAO, DPD
Shun Session, CMO

**AGENDA:**

1. **Call to Order**
   **Presiding:** Carl Raines, Chair

   **Action Taken/Recommendation(s):**
   Mr. Raines called an Open Session of the Citizens Police Review Board meeting to order at 1:01 p.m., Tuesday, October 8, 2013 at Dallas City Hall, 1500 Marilla, Room 6ES, Dallas, TX, 75201.  A quorum was present.  The Board paused for a moment of silence in remembrance of Assistant City Attorney Jackie Middlebrooks, Citizens Police Review Board attorney.

2. **Introduction of newly appointed Board Member: Miriam Dominguez**
   **Presenter:**  Carl Raines, Chair

   **Action Taken/Recommendation(s):** Mr. Raines welcomed Ms. Miriam Dominguez as newly appointed board member representative for Councilmember Medrano – District 2. Ms. Dominguez gave a brief overview of her background and board members introduced themselves.

3. **Approval of Meeting Record for September 10, 2013 Meeting**
**Presenter**: Carl Raines, Chair

**Action Taken/Recommendation(s):**
**Motion by**: Mike Pappas
**Motion seconded by**: Martin Birnbach
**Motion passed with a unanimous vote**

Mr. Raines closed the first session of the meeting at 1:12 p.m.

4. **PUBLIC HEARINGS (Cases appearing on the Board's agenda)**
**Presenter**: Carl Raines, Chair

**Action Taken/Recommendation(s):** The Board reconvened at 1:31 p.m. for public hearings. Mr. Hines provided an overview of the Board's functions, limitations and powers and read the mission statement of the Board. Complainants Albert Butler and the Dallas Police Department, Internal Affairs representatives were sworn in by Mr. Raines and asked if they had any pending litigation with the City of Dallas regarding their case.

5. **New Case: Mr. Albert Butler – Internal Affairs Investigation CN2012-462**
**Presenter**: Carl Raines, Chair

**Action Taken/Recommendation(s):** Mr. Butler provided testimony before the board. The complainant alleged Officer Bradley ordered him out of his vehicle, pushed him against his car, and then forced him to the ground without cause. He also alleges Officer Bradley, #10075 placed citations in his wallet without his knowledge and refused to provide his name and badge number when requested. Detective Juan Contreras presented a brief summary to the Internal Affairs investigation. The Board had discussion. Both technical advisors made remarks on their cities policies and procedures.

## Allegation #1:
**The complainant alleged Officer Bradley, #10075 used inappropriate force.**

## Conclusion:

Based upon the conflicting testimony and lack of an independent witness, this investigation was unable to produce a preponderance of evidence to either prove or disprove the allegation that Officer Bradley used inappropriate force when he used a straight arm bar takedown after Mr. Butler displayed suspicious behavior and failed to comply with his commands. **Therefore, this allegation is classified as "Not Sustained".**

**A motion was made by Mr. Hardt not to concur with Internal Affairs findings of Not Sustained. Mr. Foster seconded the motion and it passed with 11 in favor and 1 opposed. Mr. Williams voted in opposition.**

### Allegation #2:
The complainant alleged Officer Bradley, #10075 issued him a citation without his knowledge.

### Conclusion:

Based upon the testimonial evidence collected, this investigation was able to provide a preponderance of the evidence to disprove the allegation that Officer Bradley issued Mr. Butler a citation without his knowledge. **Therefore, this allegation is classified as "Unfounded".**

**A motion was made by Mr. Foster to concur with Internal Affairs findings of Unfounded. Mr. Saucedo seconded the motion and it passed by unanimous vote.**

### Allegation #3:
The complainant alleged Officer Bradley, #10075 failed to provide his name and badge to Mr. Butler when he requested it.

### Conclusion:

Based upon the conflicting testimony and lack of an independent witness, this investigation was unable to produce a preponderance of evidence to either prove or disprove the allegation that Officer Bradley failed to provide his name and badge to Mr. Butler when he requested it. **Therefore, this allegation is classified as "Not Sustained".**

**A motion was made by Mr. Pappas to concur with Internal Affairs findings of Not Sustained. Mr. Birnbach seconded the motion and it passed by unanimous vote.**

6. **Previous Case (Second/Final Notice Letter): Mr. Chambless McNeil– DR2013-034**
   **Presenter:** Carl Raines, Chair

   **Action Taken/Recommendation(s):** Records indicate that Mr. McNeil was not present for board meeting dates; October 8 and November 12, 2013.

   **A motion was made by Mr. Pappas to dismiss Mr. McNeil case. Mr. Foster seconded the motion and it passed by unanimous vote.**

The November 12, 2013 Citizens Police Review Board meeting adjourned at 3:17 p.m.

**APPROVED BY:**                                    **ATTEST:**

Carl Raines, Chairman                              Shun Session, Board Coordinator
Citizens Police Review Board                       Citizens Police Review Board

# EXHIBIT C

# Memorandum



CITY OF DALLAS

DATE   February 19, 2013

TO   Deputy Chief Andrew Acord
Northeast Division

SUBJECT   Chain of Command Recommendation
Control Number 2012-462

During the course of this investigation, it was discovered that on December 7, 2012, Police Officer Brian Bradley, #10075, Northeast Division, did not check out a body microphone as required by General Order 328.03.

It was also discovered that on December 7, 2012, Officer Bradley wore his long sleeve uniform shirt with both sleeves rolled up which is in violation of General Order 802.03.

It is recommended Officer Bradley's chain of command review these violations and take whatever action is deemed appropriate.

**Please prepare a memorandum to your Bureau Commander in response to this chain of command recommendation.  Return the response to the Internal Affairs Division with this investigation after your review.**

Gloria V. Perez
Deputy Chief of Police
Internal Affairs Division
Investigations Bureau

CONFIDENTIAL                    ATTACHMENT 16

"Dallas Together, we do it Better"

# Memorandum



CITY OF DALLAS

DATE: April 6, 2013

TO: Asst. Chief Thomas Lawrence
Patrol Bureau

Thru: Deputy Chief Andrew Acord
Northeast Division

SUBJECT: Chain of Command Recommendation CN2012-462

On December 7, 2012, Police Officer Brian Bradley, #10075, conducted a traffic stop documented on case #302528Z. During an investigation of this traffic stop, it was determined that Officer Bradley was not carrying a body microphone and was in violation of the department's uniform policy.

2010 and newer patrol vehicles are equipped with a body microphone and docking station. 2009 and older patrol vehicles are not equipped with a body microphone or docking station. Officer Bradley was issued a 2008 patrol vehicle #8096, in an effort to utilize older vehicles. This vehicle was not equipped with a docking station and a body microphone was not available to Officer Bradley at the time of this incident.

Officer Bradley was wearing a long sleeve police uniform shirt, with both sleeves rolled up. I met with Officer Bradley on April 3, 2013, and discussed with him the importance of maintaining a professional appearance by staying within the department uniform policy. Officer Bradley acknowledged the importance of a professional appearance and assured it would not happen again. I recommend no further action.

Bruce Chamberlain, #6652
Sergeant of Police
Northeast Patrol Division
Patrol Bureau

[] CONFIDENTIAL